**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 12-cv-01943-CMA

G.H. DANIELS III & ASSOCIATES, INC.,
HANDY ANDY SNOW REMOVAL,

      Plaintiffs,

v.

HILDA L. SOLIS, Secretary of the U.S. Department of Labor,
JANET NAPOLITANO, U.S. Department of Homeland Security,
HILLARY RODHAM CLINTON, Secretary of State,
ERIC H. HOLDER, JR., United States Attorney General,

      Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

---

      This matter is before the Court on Hilda L. Solis, *et al.*'s ("Defendants") Motion to Dismiss.  (Doc. # 43.)  For the reasons set forth below, the Court grants Defendants' motion.  (*Id.*)

## I.  BACKGROUND

**A.**    **FACTS AND PROCEDURAL HISTORY**

      Plaintiffs filed the instant action on July 27, 2012, alleging multiple claims that fundamentally challenge the Department of Labor's ("DOL") authority to promulgate legislative rules with respect to the H-2B program and the denial of their own applications.  (Doc. # 2.)   According to their complaint, Plaintiffs have submitted applications seeking permission to hire H-2B workers for several years with varying

success.  In 2010, Plaintiff G.H. Daniels III & Associates, Inc. ("G.H. Daniels")

application was approved.  However, G.H. Daniels was assessed $25,000 in fines for

employing workers outside of the area of intended employment.  (Doc. # 2 at 16-18.)

In 2012, G.H. Daniels submitted another application, which was denied.  (*Id.* at 23-31.)

It appealed DOL's determination and the Board of Alien Labor Certification Appeals

("BALCA") affirmed the denial of its application.  (*Id.* at 24.)  Plaintiff Handy Andy

Snow Removal alleges that its applications were "unlawfully delayed" from 2005-2010.

It claims that "DOL unlawfully denied" its applications for labor certifications from 2010-

2012.  (*Id.* at 31-37.)

On September 17, 2012, the Court denied Plaintiffs' Emergency Motion for

Preliminary Injunction and Mandamus Relief.  (Doc. # 33.)  The Tenth Circuit denied

Plaintiffs' appeal, which requested an order remanding their case to DOL or the

Department of Homeland Security ("DHS") with directions to grant them affirmative

relief.  (Doc. # 46.)

Defendants filed the instant Motion to Dismiss on October 9, 2012.  (Doc. # 43.)

Plaintiffs did not file a response.  On January 17, 2013, the Court issued an Order to

Show Cause (Doc. # 49), noting that Plaintiffs failed to respond to Defendant's Motion

to Dismiss (Doc. # 43) and asking Plaintiffs to explain why the case should not be

dismissed for failure to prosecute.  (Doc. # 49 at 1.)  In their Response to Order to Show

Cause (Doc. # 53), Plaintiffs justified their failure to respond to Defendants' Motion to

Dismiss by stating that the motion did not raise any matter that warranted a response.

(Doc. # 53 at 2.)

**C.   THE H2-B VISA PROGRAM**

The regulations at issue in this case concern the H-2B visa program.  Until 1986,

a single program – called the H-2 visa program – encompassed the recruitment of

unskilled foreign workers for both agricultural and non-agricultural jobs.  *See*

Immigration and Nationality Act ("INA") Pub. L. No. 82-414, § 101(a)(15)(H)(ii), 66 Stat.

163, 168 (1952) (creating H-2 visa program).  In 1986, Congress bifurcated the H-2

program to create the H-2A program for agricultural workers, and the H-2B program

for unskilled, non-agricultural workers.  Immigration Reform and Control Act of 1986

("IRCA"), Pub. L. No. 99–603, § 301(a), 100 Stat. 3359, 3411.  IRCA defines an H-2B

worker as an alien who "ha[s] a residence in a foreign country which he has no intention

of abandoning who is coming to the United States to perform [non-agricultural]

temporary service or labor if unemployed persons capable of performing such service

or labor cannot be found in this country."  8 U.S.C. § 1101(a)(15)(H)(ii)(b).  IRCA

confers broad authority and discretion regarding the issuance of nonimmigrant visas

generally.  *See* 8 U.S.C. § 1184(a)(1).  Historically, DOL, in consultation with DHS

(formerly the Immigration and Naturalization Service) has regulated H-2B applications

through informal guidelines.  *See Comite de Apoyo a los Trabajadores Agricolas v.
Solis*, 2010 WL 3431761, at *2 (E.D. Pa. Aug. 3, 2010).  On December 19, 2008, after

receiving and considering public comments, DOL promulgated new rules governing the

H-2B application process.  *See* 20 C.F.R. §§ 655-656).

Under the new rules, an employer seeking to hire unskilled foreign workers

pursuant to the H-2B program must first request a prevailing wage determination from

DOL.  *See* 20 C.F.R. § 655.10(a)(1).  After obtaining a prevailing wage determination,

employers must follow a standardized recruitment regime to test the appropriate labor

market.  20 C.F.R. § 655.15(a).  Upon completing the recruitment requirements, the

employer must file a recruitment report along with the H-2B application.  By filing an

application, the employer attests that it has complied with the recruitment and other

requirements of the H-2B regulations.  *See* 20 C.F.R. § 655.15.  If DOL determines that

the employer has made all necessary attestations and assurances, but the application

fails to comply with one or more of the criteria for certification, DOL must issue a

request for further information to the employer within 7 days of receipt of the application.

20 C.F.R. § 655.23(c).  Employers may appeal denied applications to BALCA under an

expedited appellate review process.  20 C.F.R. § 655.33(a).

## II. <u>LEGAL STANDARD</u>

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to

state a claim is to test "the sufficiency of the allegations within the four corners of the

complaint."  *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994).  A complaint will

survive such a motion only if it contains "enough facts to state a claim to relief that is

plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  For a

motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible

and not merely possible that the plaintiff is entitled to relief under the relevant law."

*Christy Sports, LLC v. Deer Valley Resort Co., Ltd.,* 555 F.3d 1188, 1192 (10th Cir.

2009).  "The plausibility standard is not akin to a probability requirement, but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court must accept all the well-pleaded
allegations of the complaint as true and must construe them in the light most favorable
to the plaintiff. *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless,
a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual
enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). "The
court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the
parties might present at trial, but to assess whether the plaintiff's complaint alone is
legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948
F.2d 1562, 1565 (10th Cir. 1991). A court may dismiss claims "when it is 'patently
obvious' that the plaintiff could not prevail on the facts alleged. . . ." *Hall v. Bellmon*, 935
F.2d 1106, 1109-10 (10th Cir. 1991).

## III. ANALYSIS

At the outset, the Court notes that Plaintiffs' complaint wholly fails to comply
with Fed. R. Civ. P. 8. Specifically, Rule 8(a) provides that a complaint "must contain
(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a
short and plain statement of the claim showing that the pleader is entitled to relief;
and (3) a demand for the relief sought . . . ." Fed. R. Civ. P. 8. Plaintiffs, represented
by counsel, filed a complaint that spans 70 pages, contains 234 disjointed and often
incomprehensible numbered paragraphs, and includes more than 1,000 pages of
attached exhibits. Plaintiff's unnecessarily lengthy complaint fails to clearly and

manageably articulate the specific allegations as to each defendant and, in fact,

appears to make no allegations regarding the U.S. Attorney General or Secretary of

State.  Moreover, the complaint uses shotgun pleadings, a tactic which this Court and

others have strongly criticized.  *See, e.g.*, *Strategic Income Fund, L.L.C. v. Spear,*

*Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 n.9, 10 (11th Cir. 2002); *Int'l Acad. of*

*Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-CV-00463-CMA-BNB, 2013 WL 212640, at *7

(D. Colo. Jan. 18, 2013) (unpublished).  Despite these obvious deficiencies, which alone

would be a sufficient basis to strike the complaint, the Court has done its best to grapple

with the substance of the allegations of the complaint.  Mindful of the difficulties in

addressing the sufficiency of a complaint of this nature, the Court has determined

that Defendants' motion to dismiss must be granted.

**A.     PLAINTIFFS' CLAIMS ARE INSUFFICIENT TO STATE A CLAIM**

Plaintiffs assert thirteen claims in their complaint.  These claims fall into two

general categories: (1) general challenges to validity of the implementing regulations of

the H2-B program, and (2) specific challenges to denials of Plaintiffs' applications for

authorization to hire H2-B workers.  Thus, the Court will address the sufficiency of

Plaintiffs' claims as they relate to these categories.

1.     <u>General Challenges to the Validity of the H2-B Program</u>

Plaintiffs allege that DHS exceeded its statutory authority when it delegated

rulemaking authority to DOL and therefore DOL lacked authority to publish the H-2B

rules.  (Doc. # 2 at 57-62).  Thus, Plaintiffs contend, decisions flowing from those rules

are unlawful.  As indicated in the oral ruling at the preliminary injunction hearing, the

Court finds the thorough and well-reasoned order in *Louisiana Forestry Assoc, Inc. v. Solis*, particularly persuasive.  889 F. Supp. 2d 711 (E.D. Pa. Aug. 20, 2012) ("*CATA IV*").  In *CATA IV*, the District Court for the Eastern District of Pennsylvania issued a lengthy order and held that DHS had the authority to require employers to receive labor certifications from DOL, *id.* at 720-27, and that DOL has rulemaking authority, *id.* at 727-32.  Following the reasoning of that decision, the Court determines that Plaintiffs have failed to state a claim, as a matter of law, with regard to their myriad allegations related to the contention that DHS exceeded its statutory authority when it delegated rulemaking authority to DOL.  (*See, e.g.*, Doc. # 2 58-62) (Counts 1, 3, 5, 6, 7, 8, 9, 11, 12, 13).

>    a)    *DHS exceeded its rulemaking authority*

An agency's interpretation of a statute that it administers is owed *Chevron* deference.  *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984).  Under the *Chevron* framework, if Congress speaks directly to the precise question at issue and the intent of Congress is clear, an agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43.  If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.  As long as the agency's interpretation is "reasonable," the court must defer to it. *Id.* at 845.

The IRCA provides that the "question of importing any alien as a nonimmigrant . . . shall be determined by the [DHS], after consultation with appropriate agencies of

the Government . . . ."  8 U.S.C. § 1184(c)(1).  As the court in *CATA IV* observed,

"the phrase 'after consultation with appropriate agencies of the Government' epitomizes

a congressional delegation of gap-filling authority."  889 F.Supp.2d at 723; *see Pauley*

*v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696–97 (1991) ("When Congress, through

express delegation or the introduction of an interpretive gap in the statutory structure,

has delegated policy-making authority to an administrative agency, the extent of judicial

review of the agency's policy determinations is limited.").  There is no doubt that the

IRCA is ambiguous, as it clearly contemplates some consultation by DHS with other

agencies but does not specify which agencies and what such consultation should entail.

Thus, the question is whether DHS's interpretation of the IRCA is reasonable.  *See*

*Chevron, U.S.A., Inc.*, 467 U.S. at 842-45.  Following the reasoning in *CATA IV*, the

Court finds that it is reasonable for DHS consult with DOL and require employers to

receive a labor certification from DOL because it "is uniquely qualified to provide advice

about the potential effects of H-2B workers' employment on United States workers, and

because the DOL has been charged for decades with the responsibility of issuing labor

certifications to employers seeking to hire temporary foreign workers."  *CATA IV*, 889

F.Supp.2d at 724-26 (DHS delegation of authority was reasonable under both the

deferential *Chevron* standard and the less deferential *Skidmore* standard).  Thus, the

Court finds, as a matter of law, that Plaintiffs have failed to set forth sufficient allegations

that DHS has impermissibly delegated authority to DOL.

b)    *DOL lacks rulemaking authority*

Plaintiffs also allege that DOL lacks rulemaking authority.  Again, *CATA IV* is

instructive.  As the Supreme Court has stated, "[i]t is axiomatic that an administrative

agency's power to promulgate legislative regulations is limited to the authority delegated

by Congress."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  Although

DOL does not have express statutory authority for rulemaking with regard to the labor

certification process, rulemaking authority may be inferred by looking at the text,

structure, and objectives of statutes.  *See CATA IV*, 889 F.Supp.2d at 728 (citing

*Bowen*, 488 U.S. at 209-16).  Thus, agencies may "speak with the force of law" if that

power is "apparent from the agency's generally conferred authority and other statutory

circumstances."  *United States v. Home Concrete & Supply, LLC*, --- U.S. ---, ---,132

S.Ct. 1836, 1843-44 (2012).  As *CATA IV* found, "Congress's broad grant of authority

to the DHS and other 'appropriate agencies,' as well as the attendant circumstances

. . . legitimize the DOL's legislative rulemaking in the H-2B program."  889 F.Supp.2d

at 728.

First, the history of the H-2B program demonstrates Congress's intent that DOL

would engage in legislative rulemaking.  It is a well-established rule of statutory

interpretation that "Congress is presumed to be aware of an administrative or judicial

interpretation of a statute and to adopt that interpretation when it re-enacts a statute

without change."  *Lorillard v. Pons*, 434 U.S. 575, 580 (1978).  Prior to the enactment of

the IRCA in 1986, Congress had vested final authority to issue H-2 visas to the Attorney

General, and the Attorney General had, in turn, required petitioning employers to apply

for labor certifications from DOL.  *CATA IV*, 889 F.Supp.2d at 728.  Thus, DOL's regulations had governed the labor certification process for non-agricultural, unskilled workers for many years.  *Id.*  That basic framework is the same one used by DHS today, which "suggests an intent to preserve existing practice under the statute, and that practice was for the DOL to engage in rulemaking."  *Id.*

Furthermore, several years before IRCA was enacted, the Supreme Court described the regulatory scheme governing the H-2 program in *Alfred L. Snapp & Sons, Inc. v. Puerto Rico*, 458 U.S. 592, 595-96 (1982).  In that case, the Supreme Court acknowledged that, pursuant to 8 U.S.C. § 1184(c), DOL made the initial determination of whether unemployed persons capable of performing the work could be found in the United States.  *Id.*  Thus, at the time IRCA was enacted, Congress was presumably aware of the Court's interpretation of § 1184(c) as authorizing DOL to promulgate regulations with regard to labor certifications.  *CATA IV*, 889 F.Supp.2d at 729 (citing *Lorillard*, 434 U.S. at 580).

"Moreover, Congress specifically acknowledged the DOL's practice of issuing legislative rules when it enacted IRCA . . . ."  *Id.*  By choosing to leave intact the statutory text governing non-agricultural workers, by implication, Congress intended to leave intact "the preexisting regulatory scheme."  *Id.*  The Supreme Court has stated that "when Congress revisits a statute giving rise to a long-standing administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."  *CFTC v. Schor*, 478 U.S. 833, 846 (1986).  By choosing to leave the

statutory framework intact, while acknowledging DOL's regulations relating to the labor certification program, Congress "endorsed the agencies' interpretation of the statute as conferring rulemaking authority on the DOL." *CATA IV*, 889 F.Supp.2d at 729.

Additionally, as *CATA IV* observed, DOL's rulemaking authority is "consistent with the objective of the statute creating the H-2B visa program, which is to permit employers to bring unskilled, non-agricultural workers to the United States only if 'unemployed persons capable of performing . . . service or labor cannot be found in this country.'" 889 F.Supp.2d at 730 (citing 8 U.S.C. § 1101(a)(15)(H)(ii)). DOL has been issuing labor certifications in conjunction with the H-2 program for decades and "assessing labor markets is an area of the DOL's particular institutional expertise." *CATA IV*, 889 F.Supp. 2d at 730. Thus, DOL's rulemaking with respect to the labor certifications is consistent with the objectives of the IRCA. Accordingly, the Court finds that DOL has rulemaking authority with regard to the H-2B program. *See id.; cf. Bayou Lawn & Landscape Svcs. V. Sec'y of Labor*, 713 F.3d 1080, 1084 (11th Cir. 2013).[1]

Plaintiffs further allege that DHS is required to make final decisions regarding the approval of H-2B Visa applications. (Doc. # 2 at 59-60) (Count 3). Implicit in this argument is Plaintiffs' assumption that DOL inappropriately acts as the final decision maker when applications are denied. This contention is also incorrect as a matter of

---

[1] The Court recognizes that the Eastern District of Pennsylvania recently held that DOL exceeded its authority to issue labor certifications based on the 2008 wage rule and invalidated a portion of the rule dealing with DOL's methodology to determine the prevailing wage. *Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 2013 WL 1163426 (E.D. Pa. Mar. 21, 2013). However, that decision does not change the result here because Plaintiffs make no arguments regarding the propriety of the 2008 wage rule or DOL's prevailing wage determination. Moreover, on August 31, 2013, DOL published a new rule regarding the wage methodology. *See* 20 C.F.R. part 655.

law.  The regulations allow DHS to act on applications with the advice of other federal

agencies.  8 U.S.C. § 1184(c)(1).  DHS, in turn, engages DOL to approve temporary

labor certifications.  While receiving a labor certification is a necessary prerequisite to

DHS approval of an employer's H-2B application, this process does not divest DHS of

its status as the final decision maker in the H-2B process.  To the extent Plaintiffs' claim

can be read to allege that Congress vested only the Attorney General with the authority

to make final decisions with regard to the program,[2] again, the law is clear that

Congress has enabled the Attorney General to "consult[] with appropriate agencies

. . . ."  *See* 8 U.S.C. § 1184(c)(1).  Accordingly, Plaintiffs have failed to state a claim

on this basis and Count 3 is also dismissed.

   c) *Violations of the Regulatory Flexibility Act and Executive Order 12,988*

  Plaintiffs also include allegations that H-2B rules violate the Regulatory Flexibility

Act ("RFA") because DOL failed to consider the "significant economic impact on a

substantial number of small entities . . . ."  (Doc. # 2, ¶ 192) (Count 2).  Section

604(a)(6) of the RFA directs agencies promulgating new rules to provide:

---

[2] The Court also notes that in their complaint, Plaintiffs inappropriately quote the statue as though it merely states "H-2B petitions shall be determined by the Attorney General."  (Doc. # 2, ¶ 199).  However, this statement ignores the fact that the sentence does not end where Plaintiffs denote a period; rather it continues on to clarify that the Attorney General may consult with agencies.  8 U.S.C. § 1184(c)(1).  It is well-established that when a quote continues, the author should include ellipses, or some other method to alert the reader that there is a further part of the sentence to avoid any possibility of misunderstanding or misinterpretation.  *See* The Bluebook, A Uniform System of Citation, 76-79 (The Harvard Law Review Association, Nineteenth Edition 2010) (where language is omitted from the end of a quoted sentence, the deletions should be indicated by an ellipses); The Chicago Manual of Style: The Essential Guide for Writers, Editors and Publishers, 458 (The University of Chicago Press, Fifteenth Edition 2003).

> a description of the steps the agency has taken to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes, including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected. . . .

5 U.S.C. § 604(a)(6).  However, 5 U.S.C. § 605(b) allows an agency to certify a rule in lieu of preparing the analysis required by Section 604 if the regulation is not expected to have a significant economic impact on a substantial number of small entities.  After citing its estimates on the number of small entities likely to be affected by the rules, and then determining the likely financial impact of the rules on those entities, DOL[3] concluded "that the costs incurred by employers under this Final Rule will not be substantially different from those incurred under the current application filing process." 73 Fed. Reg. at 78,049 (December 19, 2008).  As such, the agency was not required to provide the analysis described in Section 604.  Absent specific allegations from Plaintiffs regarding how the agency's finding was deficient, the Court finds that Plaintiffs fail to state a claim that the agency failed to comply with the requirements of 5 U.S.C. § 604(a)(6).

Plaintiffs also allege that H-2B rules fail to comply with Executive Order 12988 because they do not provide clear legal standards and fail to minimize litigation.  (Doc. # 2, ¶¶ 194, 209) (Counts 2 and 11.)  However, Executive Order 12,988 specifically states:

---

[3] DOL promulgated the rules; thus, it was DOL's sole responsibility to comply with the requirements of the Regulatory Flexibility Act.  The Court is uncertain as to why Plaintiffs' claim addresses the "agencies."

> This order shall not be construed as creating any right or benefit,
> substantive or procedural, enforceable at law or in equity by a party
> against the United States, its agencies, its officers, or any other person.
> This order shall not be construed to create any right to judicial review
> involving the compliance or noncompliance of the United States its
> agencies, its officers, or any other person with this order.

Executive Order on Civil Justice Reform, Exec. Order 12,988, 61 Fed.Reg. 4729 (Feb.

7, 1996).   Executive Order 12,988 did not create a private right of action.   *See Constr.*

*Co. v. United States Dep't of Labor,* 987 F.2d 206, 210 (3d Cir.), *cert. denied,* 510 U.S.

822 (1993) ("there is no private right of action to enforce obligations imposed on

executive branch officials by executive orders."); *Independent Meat Packers Ass'n v.*

*Butz,* 526 F.2d 228, 234 (8th Cir. 1975), *cert. denied,* 426 U.S. 966 (1976) (an executive

order is privately enforceable only if it is issued pursuant to a statutory mandate or

delegation of congressional authority); *see also United States Dep't of Health & Human*

*Servs. v. Federal Labor Relations Auth.,* 844 F.2d 1087, 1095-96 (4th Cir. 1987)

(*en banc* ) ("The executive branch . . . simply has no power to make the law; that power

rests exclusively with Congress.") (citing *Youngstown Sheet & Tube Co. v. Sawyer,*

343 U.S. 579, 587-88 (1952)).   Accordingly, Plaintiffs have failed to state a claim in this

regard.

   2. <u>Specific Challenge to Denials of G.H. Daniels' Application</u>

  Although not well-presented, G.H. Daniels appears to challenge DOL's denial

of its 2012 application.   (*See* Doc. # 2 at 61) (Count 10)).   In so doing, Plaintiffs ask for

a mandamus order requiring "DOL to certify ETA-9142 because [G.H. Daniels]

established that that United States workers are unavailable and H-2B workers will not

adversely affect United States workers." (*Id.*)   To secure mandamus relief, a petitioner

must show a "(1) that he has a clear right to relief, (2) that the [agency's] duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005); *see also Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990) (quoting *Mallard v. United Stated Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989)).  Plaintiffs fail to state a claim for mandamus relief because they are not asking the Court to compel a ministerial and preemptory action; instead, Plaintiffs request that the Court direct DOL to approve G.H. Daniels' 2012 application.  Therefore, Plaintiffs fail to state a claim for mandamus relief.

To the extent Plaintiffs' complaint can be read to assert a claim under the Administrative Procedure Act ("APA"), the Court also determines that any such claim fails as a matter of law.  First, Plaintiffs offer no facts specific to their as applied claims that demonstrate that the agencies' decisions were arbitrary and capricious, or an abuse of discretion.  Therefore, it is questionable that under even the most liberal reading, Plaintiffs' allegations can be considered well-pleaded.  *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.")  However, even if the Court were to string together the pertinent facts from throughout their lengthy complaint, Plaintiffs claims still fail as a matter of law.

When reviewing agency action, the scope of the Court's review is set forth in the APA.  *Colorado Wild, Heartwood v. U.S. Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006).  Under the APA, a reviewing court must "hold unlawful and set aside agency

action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The scope of this review is narrow and the Court may not substitute its judgment for that of the agency." *Colorado Wild*, 436 F.3d at 1213 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision.  *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 42-43 (1983).  The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* at 43.  However, "[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Env't Conservation v. EPA,* 540 U.S. 461, 497 (2004).

By regulation, DHS has designated DOL as an agency from which it shall seek advice in determining whether to issue H-2B visas and has defined the scope of the advice it seeks.  DHS requires that an employer petitioning for H-2B visas must first apply

> for a temporary labor certification with the Secretary of Labor for all areas of the United States . . . The labor certification shall be advice to [DHS] on whether or not United States workers capable of performing the temporary services or labor are available and whether or not the alien's employment will adversely affect the wages and working conditions of similarly employed United States workers.

8 C.F.R. § 214.2(h)(6)(iii)(A).  Obtaining a labor certification from DOL is a necessary precondition for filing an H-2B visa application with DHS.  *Id.* § 214.2(h)(6)(iii)(C).  A "labor certification" constitutes DOL's determination that the employer has

demonstrated that "there is an insufficient number of U.S. workers who are qualified and who will be available for the job opportunity for which certification is sought and that the employment of the H-2B workers will not adversely affect the benefits, wages, and working conditions of similarly employed U.S. workers."  20 C.F.R. § 655.50.

The first step in the H-2B labor certification process is to request a prevailing wage determination from DOL.  *Id.* at § 655.10(a)(1).  After obtaining a prevailing wage determination, employers must follow a standardized recruitment regime to test the appropriate labor market.  *Id.* at § 655.15(a).  This requires that employers open a job order with the State Workforce Agency serving the area of intended employment and run newspaper advertisements on two days, including on Sunday, in a newspaper serving the area of intended employment.  *Id.* at § 655.15(f).  In such job orders and advertisements, employers must describe the geographic area of intended employment with enough specificity to apprise applicants of any travel requirements and where applicants will likely need to reside to perform the services or labor.  *Id.* at § 655.17(b). The regulations define "area of intended employment" as "the geographic area within normal commuting distance (worksite address) of intended employment of the job opportunity for which the certification is sought."  *Id.* at § 655.4.

In the instant case, the geographic description that G.H. Daniels used in the job order it placed with Colorado's Workforce Agency and the newspaper advertisements it ran in the Denver Post stated that available jobs would be "primarily in Eagle, Garfield, Mesa, Pitkin, San Miguel and Summit counties, but may include work sites located

anywhere in the state of Colorado."  (Doc. # 9-1 at 2.)[4]  DOL found that the geographic

area of employment advertised by G.H. Daniels was not specific enough because the

entire state of Colorado was not within the same area of intended employment.  (*Id.* at

2-3.)  G.H. Daniels then filed an amended ETA Form 9142, in which it removed the job

site locations in Pitkin and San Miguel County as well as the phrase "may include work

sites located anywhere in the state of Colorado."  (*Id.* at 3.)  However, G.H. Daniels did

not file an amended job order with Colorado's State Workforce Agency or run new

newspaper advertisements.  (*See id.*)  Thus, DOL ultimately concluded that G.H.

Daniels' submitted job order and newspaper advertisements were inconsistent with the

amended work locations on the amended ETA Form 9142.  (*Id.*)  The BALCA agreed

with DOL that "the terms and conditions of employment in [G.H. Daniels'] pre-filing

recruitment advertising are less favorable than those listed in [G.H. Daniels'] amended

ETA Form 9142" and affirmed DOL's determination that G.H. Daniels' recruiting efforts

did not sufficiently apprise U.S. workers of the correct geographic area.  (*Id.* at 5.)

Both DOL and BALCA adequately explained that G.H. Daniels' pre-filing

recruitment efforts were deficient.  For example, DOL noted that Baca County, the

furthest county from G.H. Daniels' Gypsum, Colorado headquarters is 395 miles away

_____

[4] Although Plaintiffs included over 1,000 pages of exhibits, the Court was unable to locate a copy of DOL's May 17, 2012 request for further information or final determination.  Therefore, the Court bases this recitation of the facts on the June 18, 2012 BALCA decision and order affirming the denial of certification, which Plaintiffs included as an exhibit to their complaint. (See Doc. # 9-1.)  There is no indication that the BALCA decision offers an inaccurate recitation of the facts underlying the denial of G.H. Daniels' 2012 Application.  *See Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.")

from Gypsum. (Doc. # 9-1 at 5.) DOL explained that the application was denied because, by failing to comply with the recruitment regulations, G.H. Daniels did not adequately test the domestic labor market. (*Id.* at 3.) The Court finds that DOL's explanation of its reasons for denying G.H. Daniels' application adequately informed both G.H. Daniels and the Court "of the grounds of decision and the essential facts upon which the administrative decision was based." *City of Colorado Springs v. Solis*, 589 F.3d 1121, 1134 (10th Cir. 2009) (citation omitted). DOL's determination that a fourteen-hour round-trip drive is not within normal commuting distance is not an abuse of discretion. Moreover, G.H. Daniels' pre-filing recruiting efforts identify a travel requirement that is significantly more burdensome than the actual travel identified in its amended application. Thus, DOL did not clearly err in finding that G.H. Daniels misinformed the general public of the actual job requirements. Similarly, BALCA did not clearly err in affirming DOL's decision.

Plaintiffs' complaint provides no contrary facts that demonstrate they are entitled to relief. Plaintiffs do not allege that the work locations would not be located anywhere in Colorado. Instead, they allege, somewhat cryptically, that DOL and BALCA should "construe [the job site locations] in conjunction with the job schedule, . . . [which] indicates the work schedule is from 8:00 a.m. to 5:00 p.m. Monday – Friday." (Doc. # 2 at 26.) Moreover, Plaintiffs do not allege that they corrected the deficiency by re-advertising the position. (*See id.* at 27) ("Denver Post advertisement is very expensive and re-advertising is not necessary . . . .") To the extent Plaintiffs allege that because DOL approved G.H. Daniels' application in 2011 in spite of similar deficiencies, its 2012

19

application should not have been denied (*Id.* at 24), that G.H. Daniels previously

received a labor certification does not entitle it to relief here.  Accordingly, taking the

allegations in the light most favorable to Plaintiffs, they have nonetheless failed to

demonstrate that they are entitled to relief on their claims that DOL erred when it

denied G.H. Daniels' labor certificate.[5]

## B.   PLAINTIFFS' CLAIMS ARE NOT WELL-PLEADED

To the extent that any claims can be construed to allege arguments not

addressed *supra*, the Court notes that every claim alleged in Plaintiffs' complaint uses

"shotgun pleadings," referencing from 184 to 210 enumerated paragraphs.  Apparently,

Plaintiffs expect the Court to shift through the 70 page complaint and over 1,000 pages

of attached exhibits, looking for applicable facts and law pertinent to each claim.

Counts 4-10 and 12-13 are particularly egregious examples of this practice.

Counts 4-10 and 12 contain no facts or legal authority and merely reference to

previous paragraphs of the complaint.  (Doc. # 2 at 60-62.)  This Court has strongly

criticized such use of "shotgun pleading," by which a party pleads several counts or

---

[5] Plaintiffs have likewise failed to state an equitable estoppel claim.  (*See* Doc. # 2 at 60) (Count 4).  To allege equitable estoppel against the government, Plaintiffs must allege "affirmative misconduct on the part of the government; mere erroneous advice will not do." *Wade Pediatrics v. Dep't of Health and Human Svcs.*, 567 F.3d 1202, 1206 (10th Cir. 2009). Plaintiffs must also allege that (1) the government knew the facts, (2) the government intended that its conduct would be acted on or acted such that Plaintiffs had a right to believe it was so intended, (3) Plaintiffs must have been ignorant of the true facts, and (4) Plaintiffs must have relied on the government's conduct to his injury.  *Id.*  In Count 4, Plaintiffs allege: "DOL should be equitably estopped from enforcing the [civil monetary penalties] because [G.H. Daniels] relied on the tolling agreement to reach dispositions on H-2B assessments and [Fair Labor Standards Act ("FLSA")] assessments at the same time when it agreed to payment plan for FLSA assessments that precluded any appeal of the FLSA assessments."  Plaintiffs have failed to allege any conduct on behalf of the government and certainly fail to allege any affirmative misconduct.  Therefore, they fail to state a claim upon which relief may be granted.

causes of action, each of which incorporates by reference the entirety of its predecessors. *Jacobs v. Credit Suisse First Boston*, No. 11-cv-00042, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011) (unpublished) (finding "shotgun pleading" to be a "defect" contributing to an award of sanctions). As this Court noted, "the shotgun pleader foists off one of the pleading lawyer's critical tasks – sifting a mountain of facts down to a handful of those that are relevant to a given claim – onto the reader." *Id.* Courts roundly decry shotgun pleading as a subject of "great dismay," "intolerable," and "in a very real sense . . . [an] obstruction of justice." *Strategic Income Fund, L.L.C.*, 305 F.3d at 1295-96 n.9, 10. The Court will not act as counsel for Plaintiffs and attempt to determine which facts may support these claims. Plaintiffs have not made even a cursory attempt to specify what conduct by Defendants or legal basis entitles them to relief under these claims; thus, the Court finds further reason to dismiss Counts 4-10 and 12 for failure to state a claim.

Similarly, Count 13 suffers from the same deficiency, with the minor exception that Plaintiffs include, without explanation, citations to 20 C.F.R. §§ 655.23 and 655.33(a)(1). However, the mere invocation of a statute is not sufficient to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, Count 13 is also dismissed for failure to state a claim.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. # 43) is

GRANTED.

Specifically it is ORDERED Counts 1, 2, 3, 6, 8, 10, 11, and 12 are DISMISSED

WITH PREJUDICE.  It is

FURTHER ORDERED that Counts 5 and 7, which were disposed of in this

Court's September 17, 2012 oral ruling on Plaintiff's motion for a preliminary injunction

(Doc. # 33), are DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that Counts 4, 9, and 13 are DISMISSED WITHOUT

PREJUDICE.

DATED:  September __17__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge