IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 12-cv-01943-CMA-MJW

G.H. DANIELS III & ASSOCIATES, INC., and
HANDY ANDY SNOW REMOVAL,

    Plaintiffs,

ALEXANDER ACOSTA, Secretary of the U.S. Department of Labor,
JANET NAPOLITANO, Secretary of U.S. Department of Homeland Security,
HILLARY RODHAM CLINTON, Secretary of State, and
ERIC H. HOLDER, JR., United States Attorney General,

    Defendants.

---

**ORDER DENYING PLAINTIFFS' AMENDED MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES**

---

This matter is before the Court on Plaintiffs G.H. Daniels & Associates, Inc. and Handy Andy Snow Removal's Amended Motion for Attorney's Fees, Costs, and Expenses. (Doc. # 101.) Plaintiffs request that the Court award them attorney's fees, costs, and expenses in the amount of $84,575.25, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). (*Id.* at 1, 13.) Because Defendants' ("the Government") pre-litigation and litigation positions were substantially justified, the Court denies Plaintiffs' Motion.

## I.    BACKGROUND

The Court's previous Order Granting the Government's Motion to Dismiss detailed the factual background and the relevant statutory and regulatory regime and is incorporated herein. (Doc. # 54.) Plaintiffs, two employers in Colorado, alleged multiple

claims that challenged the Department of Labor's ("DOL") authority to promulgate legislative rules with respect to the H-2B visa program and the denial of their own applications. (Doc. # 2.) In short, Plaintiffs argued that the Department of Homeland Security ("DHS") exceeded its statutory authority when it delegated rulemaking authority to DOL and that, therefore, DOL lacked authority to promulgate new rules governing the H-2B application process in December 2008. *See generally* (*id.*)

**A.    THE STATUTORY AND REGULATORY REGIME**

The regulations at issue in this case concern the H-2B visa program, which enables the recruitment of unskilled, foreign workers for non-agricultural jobs. *See* Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. No. 99–603, § 301(a), 100 Stat. 3359, 3411. IRCA defines an H-2B worker as an alien who "ha[s] a residence in a foreign country which he has no intention of abandoning who is coming to the United States to perform [non-agricultural] temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii)(b). IRCA confers broad authority and discretion regarding the issuance of nonimmigrant visas generally. *See* 8 U.S.C. § 1184(a)(1).

The Immigration and Nationality Act ("INA"), IRCA's predecessor, charged the United States Attorney General, "**after consultation with appropriate agencies** of the Government," with determining whether to issue H-2B visas. 8 U.S.C. § 1184(a)(1) (emphasis added). The Attorney General delegated his responsibilities to the Immigration and Naturalization Service, which "in turn, relie[d] on the Secretary of Labor for the initial determinations." *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex.,*

*Barez*, 458 U.S. 592, 595 (1982). In 2002, Congress abolished the Immigration and Naturalization Service and transferred responsibility for the administration of the H-2B visa program, and all other immigration laws, to DHS. Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 402, 417, 116 Stat. 2135 (2002); *see also* 6 U.S.C. § 236(c).

Historically, DHS and DOL regulated H-2B visa applications through informal guidelines. *See Comite de Apoyo a los Trabajadores Agricolas v. Solis*, No. 09-240, 2010 WL 3431761, at *2 (E.D. Pa. Aug. 30, 2010), *aff'd*, *La. Forestry Ass'n v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653 (3d Cir. 2012). On December 19, 2008, after receiving and considering public comments, DHS and DOL both promulgated new rules for the H-2B visa application process. *See* 8 C.F.R. § 214; 20 C.F.R. §§ 655–56.

Under the new rules, an employer seeking to hire unskilled foreign workers pursuant to H-2B visas must first obtain a temporary labor certification from DOL. *See* 20 C.F.R. § 655.10; 8 C.F.R. § 214.2(h)(6)(iii)(C). The employer must obtain a prevailing wage determination from DOL and then follow a standardized recruitment regime to test the appropriate labor market. Upon completing the recruitment requirements, the employer must file an application for the temporary labor certification and a recruitment report with DOL. 20 C.F.R. § 655.15(a). By filing an application, the employer attests that it has complied with the recruitment and other requirements of the H-2B regulations. *See* 20 C.F.R. § 655.15. If DOL determines that the employer has made all necessary attestations and assurances, but the application fails to comply with one or more of the criteria for certification, DOL must issue a request for further information to the employer within seven days of receipt of the application. 20 C.F.R.

§ 655.23(c). An employer may appeal a denied application for the certification to the Board of Alien Labor Certification Appeals ("BALCA"), a unit of DOL, under an expedited appellate review process. 20 C.F.R. § 655.61.

Only once an employer has obtained a temporary labor certification from DOL may it petition DHS for H-2B visas. *See* 8 C.F.R. § 214.2(h)(6)(iv)(A) (an H-2B petition for temporary employment to DHS must "be accompanied by an approved temporary labor certification from [DOL] stating that qualified workers in the United States are not available and that the alien's employment will not adversely affect wages and working conditions of similarly employed United States workers.").

**B.     THIS COURT'S RULING ON THE GOVERNMENT'S MOTION TO DISMISS**

Plaintiffs' theory of the case was that in its 2008 regulations, DHS impermissibly subdelegated its responsibility for the H-2B visa program by giving DOL authority to issue and deny requisite temporary labor certifications and that DOL therefore lacked authority to publish its 2008 regulations on the certification process. *See generally* (Doc. # 2.) Plaintiffs also charged DOL with an "unlawful" denial of Plaintiff G.H. Daniels & Associates, Inc.'s request for a temporary labor certification in 2012. (*Id.* at 2, 61.)

The Government moved to dismiss all claims for failure to state claims under Federal Rule of Civil Procedure 12(b)(6) on October 9, 2012. (Doc. # 43.) As to DHS's regulations requiring a temporary labor certification from DOL as a prerequisite to H-2B visas, the Government argued that DHS's consultation with DOL was authorized by IRCA, 8 U.S.C. § 1184, and the INA, and constituted "a reasonable reliance on DOL, which has special competence in making market determinations." (*Id.* at 26–28.) As to

4

DOL's rulemaking authority, the Government argued that the text, structure, and history of the INA indicated Congress's intent to grant rulemaking authority to DOL in its consultative role with DHS. (*Id.* at 14–15.) The Government extensively cited *Louisiana Forestry Association, Inc. v. Solis* ("*CATA IV*"), 889 F. Supp. 2d 711 (E.D. Pa. 2012), to broadly define "consultation" as used in the INA. (Doc. # 43 at 15.) Finally, the Government contended that DOL's denial of G.H. Daniels & Associates, Inc.'s temporary labor certification in 2012 was reasonable because DOL and the BALCA determined that it failed to comply with certain regulatory requirements. (*Id.* at 24.)

This Court agreed with the Government and granted its Motion to Dismiss on September 17, 2013. (Doc. # 54.) As to Plaintiffs' general challenges to the validity of DHS's and DOL's rules for the H-2B program, the Court determined that Plaintiffs failed to state a claim that DHS exceeded its statutory authority when it delegated rulemaking authority to DOL. (*Id.* at 7.) The Court explicitly adopted the reasoning of *CATA IV*. (*Id.* at 6–12.) It determined that DHS's interpretation of "consultation" in the INA, 8 U.S.C. § 1184(c)(1), was reasonable (Doc. # 54 at 8), and that DOL's rulemaking authority could be inferred from history, text, structure, and objectives of the relevant statutes (*id.* at 9–12). As to Plaintiffs' specific challenge to DOL's denial of G.H. Daniels & Associates, Inc.'s 2012 application, this Court concluded that Plaintiffs failed to state a claim for mandamus relief. (*Id.* at 14–15.) To the extent Plaintiffs' Complaint could be read to assert a claim under the Administrate Procedure Act ("APA"), 5 U.S.C. § 706, the Court found that Plaintiffs offered no specific factual allegations to demonstrate the agencies' decisions were arbitrary and capricious, or an abuse of discretion, and that

5

DOL and BALCA did not err in finding that G.H. Daniels & Associates, Inc.'s pre-filing recruitments efforts were deficient. (Doc. # 54 at 15–20.) This Court therefore dismissed Plaintiffs' Complaint in its entirety. (*Id.* at 22; Doc. # 55.)

**C.     THE TENTH CIRCUIT COURT OF APPEALS' REVERSAL OF THE ORDER**

On appeal, the Court of Appeals for the Tenth Circuit issued an unpublished Amended Order and Judgment on November 5, 2015, that reversed this Court as to Plaintiffs' claim of impermissible subdelegation by DHS of its decision-making authority over the H-2B program to DOL. *G.H. Daniels III & Assoc. v. Perez*, No. 13-1479, 626 F. App'x 205, 212 (10th Cir. 2015), *as amended* (Nov. 5, 2015).[1] The Tenth Circuit rejected DHS's formulation of "consultation," as used in the INA's Section 1184(c)(1), as "unreasonable" and instead defined "consultation" as "taking counsel together; deliberation, conference." *Id.* at 210–11. The Tenth Circuit explained:

> These definitions of "consultation" certainly support DHS's decision to seek DOL's "advice" regarding aspects of its decision whether to admit H–2B workers. Moreover, it seems reasonable that that "advice" can take the form of a temporary labor certification.
>
> But advice is only that; it can, and sometimes should, be prudently ignored. Yet DHS currently has no ability to ignore DOL's advice if a certification has been denied. DOL has effectively supplanted DHS as final decision-maker as to whether to allow for the admission of some H–2B workers. That is a subdelegation.

*Id.* at 211. It held that this subdelegation was improper because there was no Congressional authorization and DOL was not an agency subordinate to DHS. *Id.* at 212. The Tenth Circuit therefore agreed with Plaintiffs' contention that DOL lacked authority to issue its 2008 regulations related to H-2B visa application. *See id.* The

---

[1] The Tenth Circuit's order and judgment is filed on this case's docket at (Doc. # 66).

Tenth Circuit rejected the Government's reliance on the Court of Appeal for the Third Circuit's decision in *Louisiana Forestry Association*, 745 F.3d at 671–73, because in its view, the Third Circuit failed to recognize that DHS had authority to issue or deny an application for H-2B visas **only** when DOL granted a temporary labor certification. 626 F. App'x at 211. "When DOL denies the certification," it explained, "DHS has nothing to add; DOL has had the final say." *Id.*

The Tenth Circuit held that Plaintiffs' specific challenges to DOL's denial of temporary labor certifications in 2010, 2011, and 2012 were moot and did not fit within the exception to the mootness doctrine for claims that are capable of repetition, yet evading review. *Id.* at 214–15. The Tenth Circuit therefore dismissed for want of jurisdiction Plaintiffs' appeal as to whether DOL's denial of their applications violated the APA. *Id.* at 215–16.

In accordance with the Tenth Circuit's Amended Order and Judgment, this Court entered an Amended Final Judgment on September 20, 2017.[2] (Doc. # 90.) The Court stated that "[o]n appeal, Plaintiffs prevailed on their claim for impermissible subdelegation of DHS's decision-making authority under the H-2B program to DOL." (*Id.*) It dismissed Plaintiffs' claims arising under the APA and concerning Civil Monetary Penalties for lack of jurisdiction. (*Id.*)

---

[2] After the Tenth Circuit issued its Order, the parties disputed DOL's imposition of Civil Monetary Penalties ("CMPs") resulting from G.H. Daniels & Associates, Inc.'s alleged violations concerning its 2010 temporary labor certification. *See* (Doc. ## 69–90.) CMPs are not at issue in the matter now before the Court.

**D.     PROCEDURAL HISTORY OF THE MOTION NOW BEFORE THE COURT**

Plaintiffs filed an Amended Motion for Attorney's Fees, Costs, and Expenses on January 16, 2018.[3] (Doc. # 101.) On the basis of being the prevailing party, Plaintiffs request that the Court award them enhanced fees, costs, and expenses in the amount of $84,575.25 and assert that their counsel's enhanced rate is reasonable. (*Id.* at 13–14.) Alternatively, should the Court deny their request for enhanced fees, Plaintiffs request that the Court award them $66,082.77 "based on the EAJA rate adjusted by the Consumer Price Index." (*Id.* at 14.) The Government filed its Response in Opposition on February 28, 2018, arguing that Plaintiffs are not entitled to fees, costs, and expenses under EAJA because its "pre-litigation and litigation positions were substantially justified." (Doc. # 104 at 2.) Plaintiffs replied in support of their Motion on April 25, 2018. (Doc. # 109.)

## II.     LEGAL STANDARD

The Equal Access to Justice Act provides:

> Except as otherwise specifically provided by statute, a court shall award to **a prevailing party** other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, **unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust**.

---

[3] Plaintiffs previously filed a First Motion for Attorney's Fees on December 19, 2017. (Doc. # 92.) They moved to amend that motion on January 10, 2018 (Doc. # 98), which the Court granted on January 12, 2018 (Doc. # 99.) Plaintiffs then filed the Amended Motion now before the Court. Though Plaintiffs' Motion for Attorney's Fees remains ripe, the Court only considers their Amended Motion.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). EAJA requires that a party seeking an award of fees and other expenses "shall allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record." 28 U.S.C. § 2412(d)(1)(B).

The government bears the burden of proving that its position was substantially justified. *Hadden v. Bowen*, 851 F.2d at 1266, 1267 (10th Cir. 1988).

> Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose.

*Pierce v. Underwood*, 487 U.S. 552, 569 (1988). Rather, "to prove in the Tenth Circuit that its position was substantially justified, the government must prove that its case had a reasonable basis in law and in fact." *Hadden*, 851 F.2d at 1266; *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995). This requires that the government demonstrate three elements: (1) a reasonable basis for the facts asserted; (2) a reasonable basis in law for the legal theory proposed; and (3) support for the legal theory by the facts alleged. *United States v. An Undetermined No. of Defendants*, 869 F. Supp. 906, 910 (D. Kan. 1994) (citing *Harris v. R.R. Ret. Bd.*, 990 F.2d 519, 520–21 (10th Cir. 1993)).

### III.    DISCUSSION

Plaintiffs assert that they "are the prevailing party on the ultimate issue in this matter, i.e., DOL's final decision-making authority over employers seeking approval to employ H-2B workers." (Doc. # 101 at 1.) They argue that the Government's position

9

was not substantially justified "[p]ursuant to the doctrine of the law of the case and mandate rule" because "the Tenth Circuit explicitly held that [the Government's] position was unreasonable." (*Id.* at 1–2.)

The Court concludes that the Government's position had a reasonable basis in law and in fact. *See Hadden*, 851 F.2d at 1266. First, because the facts in this case were substantially undisputed, the Court declines to address the initial element the Government must show—a reasonable basis for the facts asserted. *See An Undetermined No. of Defendants*, 869 F. Supp. at 910 (where the facts were "substantially undisputed" and the "case largely revolved around how the law applied to those facts," concluding that there was indisputably a reasonable basis for the government's factual allegations.)

The litigation has turned on the second element, whether the Government had a reasonable basis for its legal theory. *See id.* The Government's position, both pre-litigation and during litigation, was "that DHS's decision to condition the granting of H-2B petitions on the petitioner first receiving a labor certification from DOL [was] not a sub-delegation of authority, but a lawful conditioning of its grant of an H-2B petition on the decision of another, expert entity within the Executive branch." (Doc. # 104 at 7.)

The Court concludes that the Government's legal theory had a reasonable basis. Its theory was adopted in decisions of multiple courts, including the Third Circuit in *Louisiana Forestry Association*, 745 F.3d at 671–73, and this Court's 2013 Order Granting the Government's Motion to Dismiss (Doc. # 54). These courts' espousal of the Government's legal theory suggests that it had a reasonable basis in law. That the

Tenth Circuit ultimately rejected the Government's legal theory, *see* 626 F. App'x at 212, does not necessitate that the Government's argument was without a reasonable basis. As the Supreme Court explained in *Pierce v. Underwood*, the government may "take a position that is substantially justified, yet lose." 487 U.S. at 569; *see also Hadden*, 851 F.2d at 1267 ("The government's success or failure on the merits at each level may be evidence of whether its position was substantially justified, but that success or failure alone is not determinative of the issue."); *An Undetermined No. of Defendants*, 869 F. Supp. at 911 (explaining that rejected the government's argument "was well within the appellate court's province, but such a conclusion does not mean that the government's theory, even if wrong, is not substantially justified.").

Plaintiffs' Motion does not persuade the Court otherwise. Plaintiffs argue that "[b]ecause the Tenth Circuit held that it is unreasonable to construe 'consultation' as final decision-making authority, [the Government's] . . . position in claiming decision-making authority based on [DOL's] conseultative [sic] rule is unreasonable." (Doc. # 101 at 3.) Plaintiffs read too much into the Tenth Circuit's conclusion that "DHS's formulation of the scope and nature of DOL's 'consultation' is unreasonable." *See G.H. Daniels III & Assoc., Inc.*, 626 F. App'x at 210. The Tenth Circuit was not addressing whether the Government's theory had a reasonable basis for purposes of EAJA; it was addressing the merits of the Government's theory. This Court agrees with the Government that Plaintiffs improperly "conflate[] the Tenth Circuit's decision on the merits . . . with the question of whether the Government's litigation position was reasonable, even if wrong, for purposes of EAJA." (Doc. # 104 at 9 (citing *Madron v.*

*Astrue*, 646 F.3d at 1255, 1257 (10th Cir. 2011).) To the extent that Plaintiffs invoke "the doctrine of the law of the case and mandate rule" (Doc. # 101 at 1), Plaintiffs fail to explain how those doctrines apply to their case. The Court therefore concludes that the Government's legal theory had a reasonable basis in statutory language, accompanying regulations, and relevant case law.

Finally, the Court concludes that the Government has satisfied the third element, support for the legal theory by the facts alleged. See *An Undetermined No. of Defendants*, 869 F. Supp. at 910. Plaintiffs do not dispute otherwise.

The Government thereby demonstrates the three required elements to show that its case had a reasonable basis in law and in fact. The Court is satisfied that the Government's position was substantially justified. Accordingly, Plaintiffs' Motion under EAJA is denied. See 28 U.S.C. § 2412(d)(1)(A).

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiffs' Amended Motion for Attorney's Fees, Costs, and Expenses (Doc. # 101), brought pursuant to EAJA, is DENIED. It is

FURTHER ORDERED that Plaintiffs' First Motion for Attorney's Fees and Expenses (Doc. # 92) is DENIED AS MOOT.

DATED: July 6, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge